**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

TIMOTHY WARD SMITH, JR., #347-436    *

                 Plaintiff        *

      v                    *        Civil Action No. GLR-13-648

JOHN WOLFE, et al.             *

              Defendants     *

                           ***

## <u>MEMORANDUM OPINION</u>

Plaintiff Timothy Ward Smith, Jr. ("Smith") filed the above-captioned Complaint pursuant to 42 U.S.C. § 1983.  Defendant Warden John Wolfe, by his attorney, has filed a Motion to Dismiss, or in the Alternative for Summary Judgment.[1]  ECF No. 19.  Plaintiff has responded.  ECF Nos. 21 and 22.  After review of the pleadings and applicable law, the Court determines that a hearing is unwarranted.  <u>See</u> Local Rule 105.6 (D. Md. 2011).  For the reasons that follow, the Motion to Dismiss, construed as a Motion for Summary Judgment, will be granted.

### Background

On October 28, 2011, Smith, an inmate then confined at the Jessup Correctional Institution ("JCI"), was served with a notice of inmate rule infraction regarding the possession of contraband - a cell phone.  Despite another inmate, Kareem Green, pleading guilty to ownership

---

[1] Hearing Officer Latricia Taylor and Administrative Law Judge Mary R. Craig have not been properly served with the Complaint.  For the reasons that follow, even if they had been served, the Complaint against them would be subject to dismissal.

of the cell phone, Smith was found guilty of possession of the cell phone.  Smith alleges the procedures followed by the Department of Public Safety and Correctional Services ("DPSCS") in conducting his adjustment proceeding were in violation of the agreement reached in Bundy v. Cannon, 538 F.Supp. 410 (1982).  Ultimately, Smith was successful in having his disciplinary conviction overturned.  He seeks compensation for the 180 days he spent on disciplinary segregation.  ECF No. 1.

The record evidence demonstrates that on October 29, 2011, Smith was served with a notice of inmate rule infractions for violating rule #105 (possession of a weapon) and  #122 (possession of a cellular phone) after a homemade weapon, cellular phone, and charger were found during a search of his cell which he shared with Kareem Green.  ECF No. 19, Ex. 1.  A notation was made on the notice of infraction that Green claimed ownership of the weapon.  Id.

An adjustment hearing was held on November 10, 2011, during which Smith was found guilty of the rule #122 infraction (possession of a cell phone) but not the rule #105 infraction (possession of a weapon).  Id., Ex. 3.  Hearing Officer Taylor noted, per the infraction notice, that Green had claimed ownership of the weapon.  Id., Ex. 3, p. 5.  A text message had been extracted from the SIM card of the cell phone which read, "tell Bo call his wife emergency." Testimony was received that Smith's nickname was Boo.  Despite Green's testimony that he was called "Bo," there was no information in the database that collaborated Green's use of the nickname.  As a result, Taylor determined the text message was intended for Smith.  She further discredited Green's testimony that the cell phone belonged to him, because at the time of the infraction he failed to take ownership of the cell phone despite taking ownership of the weapon. Id., Ex. 3, p. 5.  Plaintiff received 180 days of disciplinary segregation, loss of 365 days good

conduct credits, and indefinite loss of visitation.  Id., Ex. 3, p. 6.  On December 2, 2011, Smith's

appeal to the Warden was denied.  Id., Ex. 3, pp. 12-13.

Smith filed an appeal to the Inmate Grievance Office ("IGO").  Id., Ex. 4.  After review,

Randy Watson, Director of Inmate Programs and Services for the DPSCS, determined the guilty

decision for violating rule #122 was without sufficient evidence and clearly erroneous.  Watson

noted that only one text message raised at the disciplinary hearing could be identified as directed

toward Smith.  In the absence of other evidence, Watson found that there was insufficient to

conclude Smith used the cell phone.  Further, even if Smith was aware of the phone's existence,

he could not be held accountable for possession of same.  Watson reversed the guilty finding and

vacated the sanctions imposed by the hearing officer.  Id., Exs. 2 and 4.

On June 13, 2012, a hearing was held via video conference between Administrative Law

Judge Mary R. Craig and JCI.  Id., Ex. 5.  Watson's memorandum was read into the record, and

Smith indicated his desire to proceed with the hearing seeking punitive and compensatory

damages for the time spent on disciplinary segregation.  The parties stipulated that Smith spent

146 days on disciplinary segregation, however, his good conduct credits and visitation rights

were restored.  Id., Ex. 5, p. 11.   On August 28, 2012, Craig denied and dismissed Smith's

grievance as being without merit.  Id., Ex. 6.

**Standard of Review**

To survive a Rule 12(b)(6) motion to dismiss, a complaint must set forth "a claim for

relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp.

v. Twombly, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 678; <u>Twombly</u>, 555 U.S. at 556.  In considering a

Rule 12(b)(6) motion, the Court must construe the complaint in the light most favorable to the

plaintiff, read the complaint as a whole, and take the facts asserted therein as true.  <u>Mylan Labs.,</u>

<u>Inc. v. Matkari</u>, 7 F.3d 1130, 1134 (4th Cir. 1993).

> [A] <u>pro se</u> complaint, however inartfully pleaded, must be held to less stringent
> standards than formal pleadings drafted by lawyers and can only be dismissed for
> failure to state a claim if it appears beyond doubt that the plaintiff can prove no
> set of facts in support of his claim which would entitle him to relief.

<u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976) (quoting <u>Haines v. Kerner</u>, 404 U.S. 519, 520-21

(1972)) (internal quotation marks omitted).

    "When matters outside the pleading are presented to and not excluded by the court, the

12(b)(6) motion shall be treated as one for summary judgment and disposed of as provided in

Rule 56."  <u>Laughlin v. Metro. Wash. Airports Auth.</u>, 149 F.3d 253, 260-61 (4th Cir. 1998)

(quoting Fed.R.Civ.P. 12(b)) (internal quotation marks omitted).  Under Federal Rule of Civil

Procedure 56, the Court must grant summary judgment if the moving party demonstrates there is

no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter

of law.  Fed.R.Civ.P. 56(a).

    In reviewing a motion for summary judgment, the Court views the facts in a light most

favorable to the non-moving party.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986)

(citing <u>Adickes v. S. H. Kress & Co.</u>, 398 U.S. 144, 157 (1970)).  Once a motion for summary

judgment is properly made and supported, the opposing party has the burden of showing that a

genuine dispute exists.  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87

(1986).  "[T]he mere existence of <u>some</u> alleged factual dispute between the parties will not defeat

an otherwise properly supported motion for summary judgment; the requirement is that there be

no <u>genuine</u> issue of <u>material</u> fact." <u>Anderson</u>, 477 U.S. at 247-48 (alteration in the original).

A "material fact" is one that might affect the outcome of a party's case. <u>Id.</u> at 248; <u>see also</u> <u>JKC Holding Co. v. Wash. Sports Ventures, Inc.</u>, 264 F.3d 459, 465 (4th Cir. 2001) (citing <u>Hooven-Lewis v. Caldera</u>, 249 F.3d 259, 265 (4th Cir. 2001)).  Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." <u>Anderson</u>, 477 U.S. at 248; <u>accord</u> <u>Hooven-Lewis</u>, 249 F.3d at 265.

Here, because the Court will consider matters outside of the pleading, Defendants' Motion will be construed as a Motion for Summary Judgment.

**Analysis**

First, Smith's Complaint against Wolfe is based solely upon the doctrine of <u>respondeat superior</u>, which does not apply in § 1983 claims.  <u>See</u> <u>Love-Lane v. Martin</u>, 355 F.3d 766, 782 (4th Cir. 2004) ("no <u>respondeat</u> <u>superior</u> liability under § 1983").  Supervisory officials may be held liable, however, in circumstances in which "indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." <u>Baynard v. Malone</u>, 268 F.3d 228, 235 (4th Cir. 2001) (quoting <u>Slakan v. Porter</u>, 737 F.2d 368, 372 (4th Cir.1984)) (internal quotation marks omitted). Supervisory liability must be supported with evidence that:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices [ ]; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Id. (alteration in the original) (quoting Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir.1994)).  Smith has pointed to no action or inaction on the part of Wolfe that resulted in a constitutional injury, and accordingly, his claims against Wolfe will be dismissed.

Next, Smith's allegations against Administrative Law Judge Mary Craig also fail.  The defense of absolute immunity extends to "officials whose special functions or constitutional status requires complete protection from suit." Harlow v. Fitzgerald, 457 U.S. 800, 807 (1982).  Members of the executive branch who conduct administrative adjudicatory proceedings and who are functionally comparable to judges are entitled to absolute immunity. Butz v. Economou, 438 U.S. 478, 514 (1978).

Next, even if Smith had properly served Hearing Officer Latricia Taylor with the Complaint, his claim against Taylor would be subject to dismissal.   In prison disciplinary proceedings that bring the possible loss of good conduct credits, a prisoner is entitled to certain due-process protections.  See Wolff v. McDonnell, 418 U.S. 539, 563 (1974).  These include advance written notice of the charges against him, a hearing, the right to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns, and a written decision.  Id. at 564-571.  Substantive due process is satisfied if the disciplinary hearing decision was based upon "some evidence."  Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 455 (1985).

Federal courts do not review the correctness of a disciplinary hearing officer's findings of fact.  See Kelly v. Cooper, 502 F.Supp. 1371, 1376 (E.D.Va. 1980).  The findings will only be disturbed when unsupported by any evidence, or when wholly arbitrary and capricious.  See Hill, 472 U.S. at 456; see also Baker v. Lyles, 904 F.2d 925, 933 (4th Cir. 1990).  As long as there is some evidence in the record to support a disciplinary committee's factual findings, a federal court will not review their accuracy.

6

Here, Smith received all the process he was due.  He was given timely advance written notice of the infraction, was permitted to attend the disciplinary hearing and to call witnesses on his own behalf, and received the written findings of the hearing officer.  Moreover, the hearing officer's determination of guilt was based upon some evidence, i.e. review of the SIM card, intelligence reports regarding the use of nicknames, and the testimony of Smith's cellmate. Moreover, Smith's disciplinary conviction was overturned on appeal and all of his good conduct credits were restored.  Nothing more was constitutionally required.

Next, the Court finds the restrictions placed on Smith during his assignment to segregation did not violate his constitutional rights.  Under certain circumstances, restraint which imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life may create liberty interests which are protected by the Due Process Clause.  Sandin v. Conner, 515 U.S. 472, 484 (1995).  Although the conditions of confinement in administrative segregation are more burdensome than those imposed on the general prison population, Smith has provided no evidence that the condition were so atypical that exposure to them imposed a significant hardship in relation to the ordinary incidents of prison life.[2]  See Beverati v. Smith, 120 F.3d 500, 504 (4th Cir. 1997) (finding the same).

Next, the Court finds the restrictions placed on Smith's visits did not violate his constitutional rights.  See Overton v. Bazzetta, 539 U.S. 126, 133-134 (2003).[3]   Curtailment of

---

[2] To the extent Smith's restrictions resulted in the loss of his institutional job, his claim likewise fails.  To establish a due process violation with respect to a prison job assignment Smith would have to show a constitutionally protected right to work while incarcerated, or to remain in a particular job once assigned. See Awalt v. Whalen, 809 F.Supp. 414, 416-17 (E.D. Va. 1992); Altizer v. Paderick, 569 F. 2d 812, 813 (4th Cir. 1978).  Removing a prisoner from a job simply does not rise to the level of cruel and unusual punishment prohibited by the Eighth Amendment. See Williams v. Meese, 926 F.2d 994, 998 (10th Cir. 1991).

[3] In Overton, the United States Supreme Court held that a prison policy that "uses withdrawal of visitation privileges for a limited period as a regular means of effecting prison

7

visitation, recreation, and property privileges, which emphasizes the connection between an inmate's "choices and consequences," is rationally related to providing a safer prison environment. Id. at 133. Smith's visitation was not permanently suspended. The events which led to the suspension of visitation are well documented as is Smith's disciplinary history. The loss of visits pending adjustment was not constitutionally violative as the withdrawal of visitation privileges is a proper and even necessary "to induce compliance with the rules of inmate behavior, especially for high-security prisoners who have few other privileges to lose." Id. at 134. Although the suspension of Smith's visitation was restrictive, it was of brief duration. Thus, his allegations do not present a claim of constitutional magnitude for which relief can be granted.

Finally, Smith's claim that he did not receive a disciplinary hearing within the time agreed upon in Bundy is unavailing. As outlined above, Smith's disciplinary proceedings comported in all respects with the requirements of due process. To the extent that written directives were not followed to the letter, the adoption of procedural guidelines does not give rise to a liberty interest; thus, the failure to follow regulations does not, in and of itself, result in a

---

discipline" does not result in cruel and unusual punishment. Overton, 539 U.S. at 136–37 (2003) (finding a two-year deprivation of visitation privileges did not violate the Eighth Amendment). The Supreme Court explained as follows:

> This is not a dramatic departure from accepted standards for conditions of confinement. Nor does the regulation create inhumane prison conditions, deprive inmates of basic necessities, or fail to protect their health or safety. Nor does it involve the infliction of pain or injury, or deliberate indifference to the risk that it might occur. If the withdrawal of all visitation privileges were permanent or for a much longer period, or if it were applied in an arbitrary manner to a particular inmate, the case would present different consideration.

Id. at 137 (citations omitted).

violation of due process.[4]      See Culbert v. Young, 834 F.2d 624, 628 (7th Cir. 1987).

Accordingly, Smith's allegations that state law and/or regulations were violated during his

disciplinary hearing fail to state a due process claim.

**Conclusion**

For the aforementioned reasons, Defendant Wolfe's Motion, construed as a Motion for

Summary Judgment is GRANTED.  Smith's Complaint against Administrative Law Judge Mary

Craig is DISMISSED, and his complaint against Hearing Officer Taylor is DISMISSED without

prejudice.  A separate Order follows.

July 8, 2014

                                                        /s/
                                              _____

                                              George L. Russell, III
                                              United States District Judge

---

[4] Regardless of any alleged violations of internal regulations, the law is settled that the failure to follow a prison directive or regulation does not give rise to a federal claim, if constitutional minima are met. See Myers v. Kelvenhagen, 97 F.3d 91, 94 (5th Cir. 1996).